Fourteen-year-old David L. Talley was charged by petitions with breaking and entering a vehicle and third degree theft. After a trial in the juvenile division of the Montgomery County Circuit Court, he was adjudicated a delinquent and sentenced to the custody of the Department of Youth Services. Two issues are raised on appeal.
 I
There was no material variance between the allegations of the petition and the proof at trial.
The petition charged that "[o]n or about March 29, 1984, David Lamar Talley did, *Page 1370 
with knowledge that he did not have the consent of the owner, Carolyn Ball, break into and enter a vehicle to-wit: one 1984 Ford Galaxie with the intent to commit a felony or theft . . ." The evidence was that the vehicle was a 1974 Ford Galaxie.
"[A]n adjudication of delinquency [must] be reversed if there is a material variance between the allegations of the delinquency petition and the proof introduced at trial."Driskill v. State, 376 So.2d 678, 679 (Ala. 1979). "[T]he allegations of a delinquency petition must be tested by the same standards of sufficiency as a criminal complaint for indictment." Driskill, supra. "However, our Alabama case law is clear that there must be a material variance between indictment and proof before a conviction will be overturned for that reason." Ex parte Collins, 385 So.2d 1005, 1009 (Ala. 1980).
We find no material variance between a petition describing a 1984 vehicle and proof showing a 1974 vehicle of the same make and type. Phillips v. State, 446 So.2d 57, 61-62 (Ala.Cr.App. 1983), cert. denied, ___ U.S. ___, 104 S.Ct. 3541,82 L.Ed.2d 845 (1984) (no material variance because of difference in one letter of seventeen character serial number of a truck); Daileyv. State, 374 So.2d 414 (Ala.Cr.App. 1979) (no material variance where check described as 1881 and proof showing check was numbered 1886). "A variance is not a material variance unless it misleads the accused or is substantially injurious to him in making his defense." Phillips, 446 So.2d at 62.
We further note that there was no variance between the second petition and proof that Talley committed theft in the third degree. See Driskill, supra (adjudication of delinquency affirmed where only one count of two-count petition defective).
 II
Talley argues that his confession should not have been admitted into evidence at the delinquency hearing because his arrest and detention were illegal. He contends that after his arrest he should have been immediately taken to the intake office of the juvenile detention facility instead of to the Youth Aid Division of the Montgomery Police Department where he was taken for questioning.
Talley was apprehended at the scene of the breaking and entering. Investigator Margaret Faulkner took him into custody and took him to the Youth Aid Division of the Montgomery Police Department "[t]o question him and get a statement from him and find out what part he played. To see exactly what the charge would be. * * * [T]o know the element of what he had done and who the other subject was that he was with."
After waiving his Miranda rights, Talley told Investigator Faulkner that his companion, Robert Washington, broke into the vehicle while he watched, that Washington removed the purse, and that he and Washington were looking in the purse when they were discovered. Talley maintained that he was just present while Washington committed the offense. After his statement, Talley was released to his mother.
Talley's arrest was not illegal. "A child may be taken into custody . . . [f]or a delinquent act pursuant to the laws of arrest." § 12-15-56 (2), Alabama Code 1975. A "delinquent act" is "[a]n act designated a crime under the law of this state . . ." § 12-15-1 (8), Alabama Code 1975.
The answer to the issue of whether Talley's "detention" was illegal involves an interpretation of Alabama Code 1975, § 12-15-58, which provides:
 "(a) A person taking a child into custody shall, with all possible speed, and in accordance with the provisions of this chapter and the rules of court pursuant thereto:
 "(1) Release the child to such child's parents, guardian, custodian or other suitable person able and willing to provide supervision and care for such child and issue oral counsel and warning as may be appropriate;
 "(2) Release the child to the child's parents, guardian or custodian upon their promise to bring the child before *Page 1371 
the court when requested, unless the child's placement in detention or shelter care appears required;
 "(3) Bring the child, if not released, to the intake office of probation services or deliver the child to a place of detention or shelter care designated by the court and, in the most expeditious manner possible, give notice of the action taken, together with a statement of the reasons for taking the child into custody, in writing to the intake office, to the court and to the parent, guardian or other custodian of the child and, in the case of dependency, to the department of pensions and security."
Talley argues that based upon this code section "it is obviously the intent of the legislature that said children be brought immediately to the Montgomery County Youth Facility or other Intake Office." This argument is without merit. There is no explicit or implicit statutory provision requiring the child to be brought directly "to the intake office of probation services" or "to a place of detention or shelter care designated by the court" when the child is released. Alabama has no prohibition against a law enforcement officer arresting a juvenile for a delinquent act and taking the juvenile to the police station before the juvenile is either released or taken to probation services or an authorized detention facility. Alabama has not adopted the Uniform Juvenile Court Act, which provides that "[a] person taking a child into custody, with all reasonable speed and without first taking the child elsewhere, shall" release the child to his parents or bring the child before the court or deliver him to a detention or shelter care facility designated by the court. Uniform Juvenile Court Act § 15. 9A U.L.A. 1, 23 (1979) (emphasis added).
Alabama's statutory procedure anticipates, in most instances, that a child will be temporarily detained before being immediately released.
 "(a) Unless otherwise ordered by the court pursuant to the provisions of this chapter, a child lawfully taken into custody as an allegedly dependent or delinquent child or a child in need of supervision shall immediately be released, upon the ascertainment of the necessary facts, to the care, custody and control of such child's parent, guardian, custodian or other suitable person able and willing to provide supervision and care for such child." Alabama Code 1975, § 12-15-59 (a).
See S. Davis, Rights of Juveniles § 3.9 (2d ed. 1984).
We know of no constitutional or state statutory prohibition preventing the police from questioning at the police station a juvenile arrested for the commission of a delinquent act. Rule 11 of the Alabama Rules of Juvenile Procedure sets out the rights of which a child must be informed when taken into custody and anticipates that the child will be questioned.
 III
In connection with Talley's statement, the record does not show that Talley was advised that he had a right to communicate with a parent or guardian, as required by A.R.J.P. 11 (A)(4). In Ex parte Whisenant, 466 So.2d 1006 (Ala. 1985), our Supreme Court held that in the omission of this warning, "the use in evidence of any statement given by the child is constitutionally proscribed." This issue has never been raised in the case under review and consequently has not been preserved. It is not raised before this Court. "[S]ince there was no objection, no error was preserved below, and error cannot be asserted thereon for the first time on appeal." Exparte Gilchrist, 466 So.2d 991 (Ala. 1985). See also Smith v.State, 439 So.2d 1336, 1337 (Ala.Cr.App. 1983).
After a voir dire hearing on the admissibility of Talley's statement, defense counsel agreed to the admission of that statement after the trial judge overruled the same argument we addressed in Issue II: "All right, sir. Thank you, Judge. Then, I will, as to the statement, I will submit that Miranda was correctly given and let you go on into the statement." *Page 1372 
Talley testified in his own behalf, continuing to maintain, as he had in his statement, that he was merely present but did not participate in the delinquent acts. Consequently, the admission of the confession, if error, was harmless. Romine v.State, 384 So.2d 1185, 1188 (Ala.Cr.App.), cert. denied, Exparte Romine, 384 So.2d 1188 (Ala. 1980).
The judgment of the juvenile court is affirmed.
AFFIRMED.
All Judges concur.